UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KOBE JAPANESE STEAKHOUSE
OF FLORIDA, INC.,

    Plaintiff,

v.                                       Case No.: 8:14-cv-490-T-23MAP

XU, INC.,

    Defendant.
_____

## REPORT AND RECOMMENDATION

    This is a Lanham Act case involving Defendant's unauthorized use of Plaintiff's trademark. Defendant has not entered an appearance or otherwise defended the suit. The Clerk entered a default judgment against Defendant for failing to respond to Plaintiff's complaint (doc. 8), and at this juncture the District Judge has referred to me Plaintiff's motion for default judgment (docs. 10, 11). I held a hearing on August 26, 2014, regarding damages. At my direction Plaintiff has also filed an attorney's fees petition (doc. 14). After considering the relevant filings, I recommend that the District Judge enter a default judgment for Plaintiff on all counts, awarding Plaintiff $100,000 in statutory damages, $9,432.50 in attorney's fees, and $400 in costs, and permanently enjoin Defendant from using Plaintiff's trademark.

    *A.*    *Background*

    This is a civil action for trademark counterfeiting and infringement, unfair competition, and deceptive trade practices under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and under the laws of the State of Florida. Plaintiff Kobe Japanese Steakhouse ("Kobe") is a Florida corporation with its principal place of business in Altamonte Springs, Florida. Kobe is a teppanyaki-style steakhouse and

sushi bar with numerous locations in Florida, including one in the Tampa Bay area (doc. 1 ("Cmplt." at ¶¶ 7-9). Kobe is the owner and user of a trademark, Kobe Japanese Steak House ("Plaintiff's mark" or "the mark"), Federal Registration No. 3809089, issued by the United States Patent and Trademark Office on June 29, 2010, for restaurant services featuring Japanese teppanyaki-style dining (*Id*. at ¶ 11). Kobe uses its mark in commerce throughout the region to promote its restaurant services. Since it opened in the 1980s, Kobe has spent at least $1 million in print, internet, and in-store advertising (*Id*. at ¶ 13).

Defendant XU, Inc. is a Florida corporation that operates under the registered fictitious name of CS Kobe & Italian (*Id*. at ¶ 8). Defendant uses the moniker Kobe Japanese Steak House at its restaurant in Clearwater, Florida (*Id*. at ¶ 18 and Ex. D). At some point after Plaintiff adopted and began using its mark, Defendant starting using Plaintiff's mark in promoting similar restaurant services to a similar customer base. For example, the sign in front of Defendant's Clearwater restaurant reads in prominent letters: "Kobe Japanese Steak House 2 for 1 All Day," and Defendant has marketed and sold online Groupons bearing Plaintiff's mark (*Id*. at Exs. B-D; Hrg. Ex. 1). Once Kobe learned of this infringement, and before commencing this suit, it sent Defendant a cease and desist letter to no avail (*Id*. at ¶ 22). Through the date of the Court's damages hearing, Defendant was operating under Plaintiff's mark and using Plaintiff's mark to promote its restaurant.

Plaintiff filed this suit on February 26, 2014. Specifically, Plaintiff alleges trademark infringement and counterfeiting (Counts One and Three), unfair competition/false designation of origin (Count Two), and violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count Four). Defendant has failed to plead or otherwise defend against the action, and the Clerk entered a default judgment pursuant to Fed. R. Civ. P. 55(a) on April 29, 2014 (doc.

8). Plaintiff now moves for a default judgment seeking injunctive relief, statutory damages, and reasonable attorney's fees and costs.

### B. Discussion

#### 1. *Default Judgment Standard*

The entry of a default judgment is committed to the discretion of the district judge. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). Although the factual allegations of a well-pleaded complaint are taken as true, conclusions of law are not. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1987); *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) (same). A sufficient basis must still exist in the pleadings to state a claim before a court may enter a default judgment. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). The court has "an obligation to assure that there is a legitimate basis for any award it enters, and then assure that damages are not awarded solely as the result of an unrepresented defendant's failure to respond." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

#### 2. *Trademark Infringement and Unfair Competition (Counts One, Two, and Three)*

A claim for federal counterfeiting and trademark infringement, 15 U.S.C. § 1114(1), and a false designation of origin claim (also known as unfair competition), 15 U.S.C. § 1125(a)(1), are measured by identical standards. To prove either form of the Lanham Act violations, the record must demonstrate that (1) it is the prior owner of the trademark; (2) the defendant used the mark in commerce; and (3) defendant's mark is likely to cause confusion. *International Cosmetic Exchange, Inc. v. Gapardis Health & Beauty Inc.*, 303 F.3d 1242 (11th Cir. 2002). Additionally, "[t]he analysis

of liability for Florida common law trademark infringement is the same as under the Lanham Act." *PetMed Express, Inc. v. Med-Pets.com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Accepting the allegations of the complaint as true, Plaintiff has shown that it is the prior owner and user of the trademark. And by marketing Groupons bearing Plaintiff's mark and by hanging signage at its restaurant bearing Plaintiff's mark, Defendant has used the mark in commerce to promote its restaurant services, in direct competition with Plaintiff. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001). Lastly, there exists a clear likelihood of confusion to consumers that Defendant is affiliated or connected with Plaintiff. For example, a patron of Defendant's, which adorns its restaurant with the Kobe Japanese Steak House trademark on its exterior sign, would undoubtedly believe Plaintiff is connected with Defendant's restaurant's operation. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983). Thus, Plaintiff has established liability under Counts One, Two, and Three.[1]

### 3. Statutory Damages

Plaintiff seeks $2 million in statutory damages under Count One. Section 1117(c) states that "[i]n a case involving a counterfeit mark (as defined in section 1116(d) of this title)" a plaintiff may elect "an award of statutory damages." 15 U.S.C. § 1117(c). Pursuant to 15 U.S.C. § 1116(d), a counterfeit mark is "a counterfeit of a mark that is registered in the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed

---

[1] Plaintiff also prevails on Count Four, a claim under the FDUTPA. The FDUTPA makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." Fla. Stat. § 501.204(1). To state a claim under the FDUTPA, a plaintiff must plead the following elements: (1) a deceptive act or unfair practice; (2) causation; and (3) damages. *Hill v. The Hoover Co.*, No. 1:06-cv-00096-SPM, 2012 WL 4510855, at * 4 (N.D. Fla. Oct. 1, 2012). Plaintiff's complaint, which Defendant does not challenge, establishes these elements.

and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). A "counterfeit" is described as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The only material distinction between the standard for federal trademark counterfeiting and the standard for showing trademark infringement is that in order to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show the defendant intentionally used plaintiff's trademark, knowing it was a counterfeit. *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 581 (E.D. Penn. 2002).

Plaintiff has done so, by virtue of Defendant's default. As discussed above, Plaintiff has demonstrated that Defendant's counterfeit mark is likely to confuse consumers as to the association of Defendant's restaurant and services with Plaintiff's. Plaintiff has also established that Defendant's conduct was intentional (Cmplt. at ¶¶ 19, 20, 33). The Court may therefore award statutory damages of not less than $1,000 or more than $200,000 per trademark infringed per type of goods sold, offered for sale, or distributed, regardless of willfulness, "as the Court determines to be just." *Rolex Watch USA, Inc. v. Lynch*, No. 2:12-cv-542-FtM-38UAM, 2013 WL 2897939, at *5 (M.D. Fla. June 12, 2013); *see also Cable/Home Comm. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir. 1990) (the court has wide discretion when determining the amount of statutory damages). If a defendant acts willfully, however, statutory damages may be increased to not more than $2,000,000 per trademark infringed per type of goods sold, offered for sale, or distributed. *Id*. (*citing* 15 U.S.C. § 1117(c)(2)). A court may infer willfulness from a default and from continued infringing behavior after being given notice. *See PetMed Express*, 336 F. Supp. 2d at 1220; *Arista Records, Inc. v. Beker Enters*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003); *Louis Vuitton*, 211 F.

Supp. 2d at 583.

Statutory damages are especially appropriate in default situations, because Defendant has failed to respond and an actual damages calculation "is extremely difficult if not impossible." *Chanel, Inc. v. Mesadieu*, No. 6:08-cv-1557-Orl-31KRS, 2009 WL 2496586, at *6 (M.D. Fla. Aug. 12, 2009) (citation and quotation marks omitted); *Pet Med Express,* 336 F. Supp. 2d at 1220-21. The Lanham Act, however, "does not provide guidelines for courts to use in determining an appropriate award." *Chanel, Inc. v. Mesadieu*, No. 6:08-cv-1557-Orl-31KRS, 2009 WL 2496586, at *6 (M.D. Fla. Aug. 12, 2009). Courts strive to "accomplish the dual goals of compensation and deterrence, and in particular, to emphasize that the trademark laws and court proceedings are not mere incidental costs to doing business in the profitable counterfeit trade." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, at 122-23 (S.D. N.Y. 2008); *see also Bentley Motors Ltd. Corp. v. McEntegart*, No. 8:12-cv-1582-T-33TBM, 2014 WL 408375, at *5 (M.D. Fla. Feb. 3, 2014).

To achieve this, many courts look to the Copyright Act's analogous provision, 17 U.S.C. § 504(c), when calculating statutory damages. *Id*. Under the Copyright Act, courts consider factors such as: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Id*.

Here, Defendant's refusal to accede to Kobe's out-of-court demands to cease and desist using Plaintiff's trademark and Defendant's failure to appear or otherwise defend this lawsuit support a finding that Defendant's infringement of Plaintiff's trademark is willful. Having established

willfulness, I must now determine the appropriate amount of statutory damages (up to $2 million), to compensate Plaintiff and deter Defendant's future misconduct.  On the one hand, this is not a case involving a large trademark counterfeiting operation that would warrant a statutory award near the maximum end of the applicable range.  *See Ill. Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351, 1355-56 (N.D. Ga. 2011) (observing that the statutory maximum damages award should be reserved for trademark infringement that is particularly egregious or involves large amounts of counterfeit goods).  On the other hand, I am mindful that Defendant has chosen to default rather than to cooperate in providing records from which Plaintiff and the Court can assess the extent of the infringement.  Additionally, as explained above, the Court finds that Defendant's infringing conduct was indeed willful.

In the end, Plaintiff's argument for the maximum statutory damages is unconvincing. Plaintiff has not submitted evidence regarding any of the factors listed above.  In its complaint, Plaintiff estimates that, over the years, it has spent "more than one million dollars ($1,000,000) on printed advertising, in-person sales activities, advertising in brick and mortar stores, advertising in written publications, electronic mail, and Internet advertising for Plaintiff's restaurants." (Doc. 1 at 4).  In the affidavit of Plaintiff's CEO, Chau Nguyen, submitted with its motion for default judgment, Plaintiff attests to spending "multiple millions of dollars in marketing its restaurants and the associated trademark," and also that Defendant "has sold thousands of meals using the Plaintiff's Mark." (Doc. 10-2 at ¶¶ 2-3).  There is no evidence regarding the actual scope of Defendant's sales, the number of Groupon certificates Defendant has sold, the volume of traffic in and out of Defendant's restaurant, or the amount of Defendant's sales.  Plaintiff has not attempted to contact restaurant.com (the website through which Defendant marketed its Groupons) to determine internet

traffic to Defendant's online offer. Likewise, there is no evidence concerning Plaintiff's lost revenues or harm to its reputation caused by Defendant's infringement.

What we do know is Defendant willfully infringed Plaintiff's trademark from May 22, 2013 (the date of the cease and desist letter),[2] through at least August 6, 2014 (the date of the picture admitted as Exhibit 1 at the damages hearing), approximately 63 weeks. Keeping in mind that the Court may only award damages if the record contains a basis for the award (even in default situations) and that the Court has wide discretion in awarding statutory damages, I recommend $100,000 be awarded to Plaintiff under 15 U.S.C. § 1117(c)(2). This amount represents the number of weeks Defendant infringed (63) multiplied by the approximate amount Plaintiff spent on advertising per week ($1 million over the past 30 years of operation approximates $640 per week).[3] Therefore, the damages calculation I recommend is as follows: 63 x $640 = $40,320. Considering Defendant's conduct is willful, I recommend increasing the damages award to $100,000 to deter future misconduct.

    *4.  Permanent Injunction*

Plaintiff seeks to enjoin Defendant's infringement under 15 U.S.C. § 1116. A plaintiff is entitled to permanent injunctive relief if a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *See eBay, Inc. v.*

---

[2] Plaintiff did not offer this fact. The Court located the date in Plaintiff's attorney's affidavit; it is the date Plaintiff's counsel billed Plaintiff for drafting the cease and desist letter. Plaintiff does not include the date of the letter in either its complaint or its motion for default judgment.

[3] The Complaint states Plaintiff has been in operation since the 1980s, and both the Complaint and Plaintiff's CEO's affidavit (although somewhat conflicting) establish Plaintiff has spent at least $1 million in advertising since opening its doors.

*MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiff has carried its burden on each of these four factors. Given Defendant's liability for infringing Plaintiff's mark, its refusal to cease and desist its infringing behavior, and its refusal to defend this action, it is clear that absent an injunction, Defendant will continue to use Plaintiff's mark. Therefore, it is recommended that the District Judge enter the permanent injunction as detailed in the conclusion below.

        5.       *Reasonable Attorney's Fees*

To be awarded reasonable attorney's fees, Plaintiff must establish its case is an exceptional case under § 1117(a) or establish Defendant intentionally used its mark, knowing it was counterfeit, in connection with the sale, offering for sale, or distribution of goods or services under § 1117(b). The Eleventh Circuit interprets exceptional cases as those where the infringing party acts in a "malicious," "fraudulent," "deliberate," or "willful" manner. *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994). Because I find Defendant's infringement is willful, I recommend Plaintiff be awarded reasonable attorney's fees and costs. Plaintiff has requested attorney's fees in the amount of $9,432.50 (doc. 14).[4] I find this amount reasonable. Plaintiff has not submitted information regarding its costs. Nonetheless, I recommend Plaintiff be awarded $400 in costs as reimbursement for its filing fee.

    C.       Conclusion

For the reasons stated here, I recommend Plaintiff's motions for a default judgment and attorney's fees (docs. 10, 14) be GRANTED as follows:

---

[4] This amount represents 34.3 hours of work compensated at the rate of $275 per hour. I find this calculation to be reasonable. *See Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (court itself is an attorneys' fees expert and may consider its own knowledge and experience concerning reasonable and proper fees).

(1) The Clerk of Court be directed to enter judgment for Plaintiff and against Defendant on Counts One through Four;

(2) Plaintiff be awarded $100,000 in statutory damages due to Defendant's willfully infringing conduct, pursuant to 15 U.S.C. § 1117(c)(2);

(3) Plaintiff be awarded $9,432.50 in attorney's fees and $400 in costs pursuant to 15 U.S.C. § 1117(a); and

(4) Pursuant to 15 U.S.C. § 1116, Defendant and its officer, directors, agents, servants, employees, attorneys, successors, and assigns, and all people in active concert or participation therewith, be enjoined from:

    a. using Plaintiff's trademark Kobe Japanese Steak House (U.S. Registration No. 3809089), and any variations or phoentic equivalents of the mark, in connection with the sale of its goods or services;

    b. using any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Defendant, or of any third parties, are sponsored by, authorized by, or in any way associated with Plaintiff;

    c. falsely representing itself as being connected with Plaintiff, or sponsored by or associated with Plaintiff, or engaging in any act which is likely to falsely cause the trade, retailers, and/or members of the purchasing public to believe that Defendant is associated with Plaintiff; and

    d. affixing, applying, annexing, or using in connection with the sale of any goods or services sold by Defendant, a false description or representation

including words tending to falsely describe or represent such goods or services as being those of Plaintiff.

(5) Defendant and all officer, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, are required to:

    a.    recall all packaging, online ads, printed advertisements, and other written or printed material in the possession or control of Defendant that bear any infringing mark or any variation thereof, as specified in paragraph (4)(a); and

    b.    file a written report with the Court detailing, under oath, the manner of compliance with paragraph (5) and serve the report on Plaintiff within 30 days of being served with the injunction.

IT IS SO RECOMMENDED in Tampa, Florida on September 15, 2014.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).